**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| TODD AUGENBAUM,<br><br>    Plaintiff,<br><br>  v.<br><br>J. ALEXANDER'S HOLDINGS, INC., LONNIE J. STOUT II, RAYMOND R. QUIRK, DOUGLAS K. AMMERMAN, TIMOTHY T. JANSZEN, FRANK R. MARTIRE, RONALD B. MAGGARD, SR., and CARL J. GRASSI,<br><br>    Defendants. | Case No. 1:21-cv-4740<br><br>JURY TRIAL DEMANDED |

**COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934**

  Plaintiff Todd Augenbaum ("Plaintiff"), by and through his undersigned counsel, alleges the following based upon personal knowledge as to those allegations concerning Plaintiff and, as to all other matters, upon the investigation of counsel, which includes, without limitation: (a) review and analysis of public filings made by J. Alexander's Holdings, Inc. (""J. Alexanders" or the "Company"), with the U.S. Securities and Exchange Commission (the "SEC"); (b) review and analysis of press releases; (c) review of news articles, shareholder communications, and postings on J. Alexanders' website; and (d) review of other publicly available information.

**NATURE OF THE ACTION**

  1. Plaintiff owns shares of J. Alexanders Class A common stock ("JAX Stock") and brings this action to cure violations of Section 14(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§78n(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, in connection with the proposed merger of J. Alexanders with SPB Hospitality LLC ("Parent"), and Titan Merger Sub, Inc. ("Merger Sub"), a direct wholly-owned subsidiary of Parent.

2. On July 2, 2021, J. Alexanders' board of directors (the "Board") caused J. Alexanders to enter into an agreement and plan of merger (the "Merger Agreement") with Parent and Merger Sub. The transaction referred to in the Merger Agreement (*i.e.,* J. Alexanders will become a subsidiary of Parent) is referred to herein as the "Merger" or the "Proposed Transaction."

3. Under the terms of the Merger Agreement, each share of JAX Stock issued and outstanding immediately prior to the effective time of the merger will be converted into the right to receive $14.00 in cash (the "Merger Consideration").

4. The consummation of the Proposed Transaction is subject to certain closing conditions, including the approval of the Company's shareholders. J. Alexanders expects the Proposed Transaction to close in the fourth quarter of 2021.

5. On August 9, 2021, in order to convince J. Alexanders shareholders to vote in favor of the Proposed Transaction, the Board authorized the filing of a preliminary proxy statement, which was filed by J. Alexanders on Schedule 14A with the SEC (the "Proxy Statement").

6. However, the Proxy Statement failed to disclose material information necessary for J. Alexanders shareholders to properly assess the fairness of the Proposed Transaction, thereby rendering certain statements in the Proxy Statement materially incomplete and misleading.

7. It is imperative that the material information that has been omitted from the Proxy Statement be disclosed to J. Alexanders shareholders prior to the forthcoming shareholder vote so that they can properly exercise their corporate suffrage rights. For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Section 14(a) of the Exchange Act and Rule 14a-9.

8. Plaintiff seeks to enjoin Defendants from holding a shareholder vote on the Proposed Transaction and taking any steps to consummate the Proposed Transaction unless and

until the material information discussed below is disclosed to J. Alexanders shareholders sufficiently in advance of the vote on the Proposed Transaction or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1331 as Plaintiff alleges violations of Section 14(a) of the Exchange Act.

10. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in this District or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over each Defendant by this Court permissible under the traditional notions of fair play and substantial justice.

11. In connection with the wrongs alleged herein, Defendants used the mails and the means or instrumentalities of interstate commerce.

12. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. §78aa, and 28 U.S.C. §1391, because Defendants are found or are inhabitants or transact business in this District. Additionally, the Proxy Statement was or will be mailed to Plaintiff and other J. Alexanders shareholders in this District.

## THE PARTIES

13. Plaintiff is, and at all relevant times has been, a J. Alexanders shareholder.

14. Defendant J. Alexanders describes itself as is a collection of boutique restaurants. J. Alexanders is headquartered in Tennessee and JAX Stock is traded on the New York Stock Exchange under the symbol "JAX".

15. Defendant Lonnie J. Stout II ("Stout") served as Executive Chairman of the Board at all times relevant to this Complaint.

16. Defendants Raymond R. Quirk, Douglas K. Ammerman, Timothy T. Janszen, Frank R. Martire, Ronald B. Maggard, Sr., and Carl J. Grassi (collectively with Stout referred to herein as the "Individual Defendants" and, with J. Alexanders as "Defendants") served on the Board at all times relevant to this Complaint.

## SUBSTANTIVE ALLEGATIONS

### J. Alexanders Announces the Proposed Transaction

17. Before markets opened on March 26, 2021, J. Alexanders disclosed that it had entered into the Merger Agreement via a press release that stated, in pertinent part:

### DEFENDANTS' INTERESTS IN THE PROPOSED TRANSACTION

### Interests of the Officers and Directors of J. Alexanders in Completing the Merger

18. The following chart, taken from the Proxy Statement, shows some of the potential payouts to J. Alexanders' officers and directors as a result of the Proposed Transaction:

| Name | Cash ($) | Equity ($) | Perquisites ($) | Total ($) |
|---|---|---|---|---|
| Mark A. Parkey | 2,016,545 | 2,099,338 | 49,435 | 4,165,318 |
| Lonnie J. Stout II | 2,259,205 | 2,946,900 | 49,435 | 5,255,540 |
| J. Michael Moore | 1,227,423 | 1,725,706 | 49,435 | 3,002,564 |

19. In addition, each non-employee director has contingent equity that will vest as a result of the Proposed Transaction:

| Name | Shares subject to Options | Value of Options ($) | Restricted Shares | Value of Restricted Shares | Total ($) |
|---|---|---|---|---|---|
| Douglas K. Ammerman | 60,000 | 263,200 | 18,375 | 257,250 | 520,450 |
| Carl J. Grassi | -- | -- | 10,500 | 147,000 | 147,000 |
| Timothy T. Janszen | 60,000 | 263,200 | 18,375 | 257,250 | 520,450 |
| Ronald B. Maggard, Sr. | 60,000 | 263,200 | 18,375 | 257,250 | 520,450 |
| Frank R. Martire | 60,000 | 263,200 | 18,375 | 257,250 | 520,450 |
| Raymond R. Quirk | 60,000 | 263,200 | 18,375 | 257,250 | 520,450 |

## MATERIAL OMISSIONS IN THE PROXY STATEMENT

20.  Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to J. Alexanders' shareholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy Statement omits material information that is necessary for J. Alexanders' shareholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction.

**Material Omissions Relating to Financial Analyses**

21.  The Proxy Statement represents that J. Alexanders engaged Piper Sandler & Co. ("Piper Sandler") as financial advisors to advise it and the Board with respect to the Proposed Transaction.

22.  The Proxy Statement explains that Piper Sandler presented the Board with financial analyses supporting its opinion as to the fairness of the Proposed Transaction from a financial point of view to the Company's shareholders. However, the Proxy Statement's descriptions of those analyses omit the following material information preventing shareholders from determining what weight, if any, to place on the analyses when voting with respect to the Proposed Transaction. Disclosure of this omitted information would significantly alter the total mix of information available to shareholders.

23.  With respect to Piper Sandler's *Selected Publicly Companies Analysis*, the Proxy Statement omits the financial, operating and stock market information of the selected companies.

24.  With respect to Piper Sandler's *Selected Precedent Transactions Analysis*, the Proxy Statement omits the financial ratios observed for each of the selected companies utilized.

25.  With respect to Piper Sandler's *Discounted Cash Flow Analyses*, the Proxy Statement omits: Piper Sandler's calculated Unlevered Cash Flows and each of the inputs used to

calculate the same; the terminal value utilized; the inputs and assumptions underlying the use of terminal multiples; and, the inputs and assumptions underlying the discount rates used.

**Material Omissions Relating to Piper Sandler**

26. The Proxy Statement includes a fairness opinion from Piper Sandler stating, in part, "[w]ithin the past three years, we have received investment banking fees from portfolio companies of investment funds affiliated with the Acquiror, which fees amount to approximately $10 million."

27. However, the Proxy Statement also fails to disclose the timing and nature of the past services Piper Sandler provided to Parent and its affiliates, and whether any of those services are ongoing.

28. Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

* * *

29. The omission of the foregoing information renders the Proxy Statement materially incomplete, in contravention of the Exchange Act.

### COUNT I

**AGAINST ALL DEFENDANTS FOR VIOLATIONS OF SECTION 14(A) OF THE EXCHANGE ACT AND RULE 14A-9 PROMULGATED THEREUNDER**

30. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

31. Section 14(a)(1) makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may

prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. §78n(a)(1).

32. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) provides that communications with shareholders in a recommendation statement shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. §240.14a-9.

33. Defendants have issued the Proxy Statement with the intention of soliciting shareholders' support for the Proposed Transaction. Each Defendant reviewed and authorized the dissemination of the Proxy Statement, which fails to provide critical information regarding, among other things, the background of the transaction and financial projections for the Company.

34. In so doing, Defendants omitted material facts necessary to make the statements made not misleading. Each Defendant, by virtue of their roles as officers and/or directors, was aware of the omitted information but failed to disclose such information, in violation of Section 14(a). Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

35. Defendants knew or were negligent in not knowing that the Proxy Statement is materially misleading and omits material facts that are necessary to render it not misleading.

Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction.

36. Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy Statement, rendering the sections of the Proxy Statement identified above materially incomplete and misleading. Indeed, Defendants were required to be particularly attentive to the procedures followed in preparing the Proxy Statement and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

37. Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully as the Company's directors.

38. The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.

39. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment and relief as follows:

A. Enjoining Defendants and all persons acting in concert with them from proceeding with any shareholder vote on the Proposed Transaction or consummating the Proposed

Transaction, unless and until the Company discloses the material information discussed above which has been omitted from the Proxy Statement;

B. Directing Defendants to account to Plaintiff for all damages sustained as a result of their wrongdoing;

C. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

D. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: August 23, 2021

ABRAHAM, FRUCHTER & TWERSKY, LLP

By: /s/ Michael J. Klein
Michael J. Klein
450 7th Avenue, 38th Fl.
New York, NY 10123
Telephone: (212) 279-5050
Facsimile: (212) 279-3655
Email: mklein@aflaw.com

*Attorneys for Plaintiff*